Good morning. May it please the Court, James Marino for all the appellants. I'm sorry to say at the outset that this is not a simple case. The complaint that the appellants brought down to the trial court, the state trial court, involved a request by them for the trial court to declare what was the meaning of certain sections of the Tribal-State Compact. In particular, the section, I believe it's 10.3, which establishes, supposedly, a workers' compensation system for all employees of tribal casinos. And it allows the tribes to either, one, participate in the state system, which is established by the Constitution of the state, or to, in effect, opt out and provide their own system with certain specific guidelines, namely that there be independent tribunals, that there be hearings, notices, many of the features that would be part of a state system if they had developed it. The declaratory relief was asking for an interpretation of that. What does that mean, a comparable system? That's obviously a rather poor choice of words without extreme guidelines. For example, a state system has a guideline. Never use guidelines. That was just a joke. Well, that takes us, actually, to another question of declaratory relief, and that was what was meant by Section 10.8, which was the original environmental protection section of the Tribal-State Compact in which the tribes are bound to use a good-faith effort to mitigate all off-site impacts, adverse impacts. They were asking, the citizens of Cineas Valley were asking, for some interpretation as to what does that mean, because in their view, as alleged in the complaint, the tribe involved there was making no effort at all, and it didn't take anyone to figure out that wasn't a good-faith effort. But in any case, they were asking some guidelines from the trial judge as to what that meant. Well, let me jump to something that's bothering me. You've got an Indian tribe here that's involved, and apparently, according to Rule 19, the tribe appears to be an indispensable party. You can't join them because they're immune, and it seems that American Greyhound v. Hull says that under these circumstances, it's appropriate to dismiss. How do you get around American Greyhound? I didn't see you address that in your briefs. Well, I didn't follow it up. Unfortunately, I'm sorry to say the clerk did not accept and rather rejected a rather excellent brief, amicus brief, by the California Applicant Attorneys Association, and he did address that issue. Did you address this American Greyhound issue? I didn't address it directly in my brief. Isn't that fatal to your case? Does it make it an easy case? The tribe's an indispensable party. You're involving the tribe, and you can't join them because they're immune. That's the end of it, according to American Greyhound. I understand what the case says, but that's not the issue here. The issue here involves strictly state court issues. There are no federal issues here. The tribe is not a necessary or indispensable party. Why not? You're trying to accomplish something that impacts upon the behavior of the tribe, are you not? Well, indirectly, yes. Well, isn't that the end of it? They're indispensable. No. No, it's not. So what do you expect the tribe to do when it gets a judgment? Well, the judgment would be one of either declaratory relief, establishing what's meant by the claim. Declaratory relief against whom? Against the state. Well, not against. It's simply asking the court to declare what does this language mean? And so then what do you? What rights do we as citizens of California have? Against whom? Well, it's not necessarily against anyone. Well, what are you going to do with this judgment? Are you just going to put it up on your wall and say I won? No, there may be another step after that. What's that? The step would be I've imposed the mandate. Enforce the judgment. That's the second half of the case. The second half of the case is if, in fact, this compact is legal, it's a legal compact, it's not violative of the state constitution, then we're asking the court to order the state to enforce that compact. Against? Against the governor in this case. Governor, go down there and do your duty and enforce this compact because you wrote a compact that said every employee of a casino will either have state court protection, state workers' protection under the constitution or there will be a comparable system. And you don't think the tribe has an interest in what you're trying to do? Well, I think they have an interest in operating the way it is. I'm sure. They have no system now. But I made an interest in coming into court. Well, they can come into court. They have a right to come in. They can join anything. They joined in a hotel restaurant employee's case. But if they don't come in, let me go back to one of your earlier responses to Judge Trott's earlier questions. You said, I think, and I want to be sure I understood you, that Rule 19 doesn't apply because this is a state court case or did I mishear you? State court issues. Purely state court issues. They do not involve internal issues and they do not have a direct impact on the tribe. They have no interest. Let me back up and take this step by step in a way that I can understand it. This case was filed in state court and removed to federal court. Yes. Does the federal court have subject matter jurisdiction over the case? No. We asked it to be remanded. Did you argue that it doesn't have subject matter jurisdiction? Yes. You filed a motion to remand. No. I looked at your brief. Do you argue it in your brief? I don't think I argued the motion to remand because it was unheard. And part of the suit is being brought under the federal AIGRA statute, correct? No. No. No part of the statute. You don't rely on any respect on AIGRA? No. We're relying on the laws of the State of California, which establish the election laws, which establish by Constitution what the rights of injured workers are and so on. Okay. And the question is, is this compact lawfully in effect under State law and it's a State law determination? Okay. I understand then that you're contesting the subject matter jurisdiction in the federal district court. And, of course, I also understand that whether you contest it or not, that's a question we need to reach. Yes. Assuming that we think we have subject matter jurisdiction, does Rule 19 apply? Well, I would say this. If it does apply, and I don't know the answer to that question. If it does apply, this is one of the exceptions. This is a public interest exception that I talked about, the McCaw, Babbitt, Sherman cases, which talk about something of great public interest. We're talking here about 40,000 to 50,000 employees of casinos. We're talking about perhaps hundreds of thousands of residents of communities that are impacted by these casinos and have no environmental protections because the governor is not even enforcing the ones that are in the existing compacts. I understand the newer compacts are better written, that they have more clear language and perhaps would be more enforceable, assuming, again, the governor chooses to enforce them. But the point is that these are state law questions, just like the election code question, whether it was a proper election. But if the public interest exception did not take the Greyhound Racing case out of Rule 19, how would it do it here? That is to say, the public interest, it seems to me, was directly implicated in that Arizona case. Well, I think it does because the tribes are only indirectly affected. We are not asking. You just moved to a different ground. That is to say, you're saying here the tribes are not directly affected. I asked you to tell me how the public interest is affected differentially in this case compared to the Greyhound Racing case. Well, I think it's a much greater impact on the public. I mean, we're talking here about the tort laws of the state of California. The compact provides in it that all tort claims will be resolved promptly and fairly. Again, that's a question that needs to be, what does that mean, promptly and fairly? Granted, they have to have $5 million of insurance, but if there's no means of enforcing promptly and fairly, then as is the case, many, many people are being injured in casinos and Indian businesses who have no recourse whatsoever. They can't sue themselves because of sovereign immunity. All they can do is say, Governor, either you do something about this, you compel the tribes to fairly and promptly resolve these claims, or you take the steps provided in that compact, Section 11.2, and you threaten them with termination of that compact if they don't comply. That's the only protection the people of the state have. And it's very skillfully used by the Attorney General. They remove it, saying, oh, well, the tribes are necessary. You can't join them because of sovereign immunity. So by this Catch-22 mechanism, you're all out of court. And I thought that that's what this Court was saying is really not fair under EEOC versus Peabody Coal, the recent case of this last March, in saying, well, you should never deny a litigant their day in court because there may be some ancillary sovereign who can claim immunity. Just make them a nominal party. Join them. Well, yeah, I know that Peabody Coal case. The difference between Peabody Coal in this case is that the tribe was not immune from suit by the plaintiff in that case. Yeah, well, but I'm saying the theory, it seems to me, that nobody should be denied their day in court simply because someone's able to claim a sovereign over here should be a party, that the Court was saying, well, when that kind of thing comes up, make them a nominal party. I mean, Judge Real could have joined, said, no, go join the tribe. You can't make an Indian tribe a nominal party. You can't do it. Over and out. They're a separate sovereign. Whether we like it or whether it's intelligent or not intelligent, that seems to be. Well, that was a discussion in the Kiowa case. I must say I agree with the Supreme Court's analysis, but not the result in that Kiowa case. I agreed with the dissent's opinion. But that may be the solution ultimately. But I'm just saying from the standpoint of the people of the State of California, presumably who this compact was designed to protect in exchange for this exclusive right to have a single family. American Greyhound says it's not designed to protect the people of the State of California. It's designed to protect individuals, and that's why it's a private matter, not a public matter. Secondly, the test is whether as a practical matter, I'm using the language now of American Greyhound, it's going to affect the interests of the tribe. And it seems to me as a practical matter, whether you use the words direct or indirect, or you're going to use the mandate or whatever as a practical matter, this does affect the tribe. The only way it affects the tribe is if that compact is declared, let's say, to be either partially or wholly invalid because it's not lawfully in effect, then they go back and negotiate another compact. You've just admitted that as a practical matter, it affects the tribe. Yeah, it has some effect. An indirect economic effect, which when balanced with the public interest involved here in protecting the tort victims, the workers of this state, and the communities who have to suffer the adverse impacts of these now mega casinos that are going up, that the public interest exception clearly applies. Except for American Greyhound, you might have a good argument. Well, you can reverse it. Oh, uh-huh. Yeah, right. One panel can reverse the other one. How about this? Let's hear from the other side, and you've got a lot of time saved. Good morning, and may it please the Court. My name is Mark LaForestier from the Attorney General's Office representing the State of California and Governor Schwarzenegger. Is there any jurisdiction here? Well, there's certainly Federal Western jurisdiction. Is there? Yes. The issue here, and I understand that the appellants contend that this is purely a State law. Could you speak up a little? I'm sorry. Yes. I understand that the appellants contention that this is purely a State law issue, but at the basis of this is the effect of the compacts on what the authority is of the State on Indian lands. In 1997, an opinion authored by Judge Trott in Cabazon v. Wilson, the Court said that the case begins and ends with the compacts, and that's really what this case does, too, only different compacts, the 99 compacts. And I think it's important, I think, to understand the compact process, its origins under IGRA and its purposes, because I think it resolves along the way the reasons that the tribes are to be dispensable, that no public rights exception should apply, and under the terms of the compacts that the appellants have no standing. Because the State Indian compacts are authorized by IGRA. Exactly. That's where the Federal question jurisdiction comes. Exactly. And prior to IGRA, under the California v. Cabazon decision of the United States Supreme Court, in 1987, it was decided that Public Law 280 does not grant to the State of California civil regulatory authority over tribal gaming activities. IGRA was enacted in direct response to an outcry from the States about their concerns for crime on Indian reservations in connection with Indian gaming. Congress passed that statute for two purposes. The first was to provide a statutory basis for the conduct of tribal gaming, and the second was to provide a mechanism by which the State could exercise some authority over tribal gaming activities. And that mechanism is the compact, which is the compromise that lies at the heart of IGRA and is a very unique mechanism. And it is designed to provide the States and the tribes an ability to come together as governments and negotiate over their unique sovereign concerns. It does not authorize a State to unilaterally impose its civil regulatory laws upon tribes. Quite to the contrary, IGRA contemplated that where a State seeks to do something like that, there is the opportunity to sue the State for a failure of negotiating good faith. And the State has some experience, as Judge Fletcher knows, with bad faith, so-called bad faith litigation. So the State does not have an opportunity to unilaterally impose its workers' compensation laws, for example, on tribes, or its environmental laws on tribes, because its state civil regulatory jurisdiction does not apply. We must look to the compact to determine what the rights are of the State and the tribe and of citizens who enter the Indian reservation either to game or to be employed at tribal casinos. And so that's where the federal question comes. What is the authority of the State? What is the intent and purposes of the compacts? What are the rights here? And when we look at the 1999 compacts, the first thing that jumps out with respect to the standing question is that Section 15.1 of the 1999 compacts denies that third parties have any authority under the compacts to enforce their terms, which is precisely what the appellants are seeking to do here. And clearly, part of the bargain between the tribes and the States in 1999 was that the tribes certainly did not want third-party individuals interfering with the compact relationship between the tribes and the States. Concerns about compact compliance were to be handled on a government-to-government basis between tribes and the State. And that's the federal question. No, I think I understand where the federal question is. What I don't understand is where's the State? And this is outside this lawsuit, but, I mean, there may be a real issue here. And your client, as far as I can tell, has said to these people and people like them, well, you might as well go whistle. We don't care. Well, I can't really comment with respect to what the compliance of the tribe is. And that's really a policy question for the Governor's office that's outside the scope of litigation, although I understand the Court's concern. All I can say is that the Governor – there is a mechanism in place for disputes to be resolved between the State and the tribes. That mechanism is in Section 9. As far as I can tell, on this point, there seems to be no dispute between the State and the tribes because the State has not chosen to make a dispute. That's correct. That's correct, Your Honor. And these plaintiffs are supposed to do what? Decide they don't want to work for the tribe because, in fact, there is no workers' comp system in place? Well, there is a workers' compensation in place, I understand. That gets to the substance of the issue, which we haven't addressed because we've raised the indispensability argument and standing questions. But the compacts are designed, and it is not in conflict with IGRA or the congressional purposes at all, to authorize the tribes to be the primary regulators of their gaming operations. It may be unwise, but that is the state of the law, and that was the intention of the compacts. The present Governor has taken a different approach. That's about all I can say about that. And I preface my question by understanding that this is not the lawsuit in front of us. Well, I would like to briefly address Article 14, Section 4 of the California Constitution because that seems to be the heart of the allegation that this case somehow presents an issue of state law of substance that would justify the application of the public rights exception. And I think if we look, setting aside the Cabazon decision and all of the case law that suggests that the state's civil regulatory authority would not apply in Indian country absent the compacts, and that certainly would apply to the California Constitution in this provision in particular, the text of that section grants plenary authority to the legislature over workers' compensation issues. And it applies to, it authorizes the legislature to enact a workers' compensation scheme, a comprehensive scheme that applies to any or all employers and affecting any or all of their employees. So right from the outset, it does not mandate that all employees within the state, even off of Indian country, would be covered by that scheme. Moreover, these compacts, after negotiation by the Governor, were ratified by the legislature. Now, that ratification in and of itself, because those compacts contained a provision related to workers' compensation, would presumably be deemed an exercise of the State's or the legislature's plenary authority over workers' compensation. So really there is no issue here. There is no substantial constitutional question. And, of course, we don't get to that at all, assuming we agree with you either on there's no private authority, no authority for a private cause of action, or if we agree with you on Rule 19. That's correct. And I mentioned that merely really to underscore that the public rights exception is not applicable here. Judge Canby in the American Greyhound case said that if the public rights exception is to apply, there must be a substantial constitutional question. And that just doesn't exist here. If there are no further questions, I would just request that the Court affirm the district court. Thank you. Thank you. Mr. Moreno. Yes. First of all, let me say that's not what Cabazon said at all, what counsel stated that it had no regulatory authority over gambling. What Cabazon said was, well, if you have a form of gambling that you're allowing now and you're simply regulating it, in that case it was card rooms, which were regulated by local government, and bingo, which was permitted all over the state but for charitable purposes and not high stakes. So what the Court said was, well, if you have that otherwise and tribal governments have some government authority like you do, just like the city of Palm Springs or whatever, then the tribe should be able to have bingo and card rooms too and they can regulate it how they see fit. So they didn't say they don't have regulatory power over gambling. They said if you have a category of gambling that's regulatory and not prohibitory, which is the opposite like craps and blackjack and so on, then you can have the regulatory ones on tribal ground just like they do out there in the real world. That notwithstanding, let's get into the question of standing. Counsel for the government reminds us that there's a section of the compact that excludes a private right of action and relegates this to government to government. How do you get around that? Well, California has a longstanding history of allowing their citizens to take their government to task when they don't do their duty. But the compact here says there's no private right of action. But I'm saying that the compact cannot be used to waive the rights of the citizens to make their government toe the line. That's your answer, that it's null and void between sovereigns? What I'm going to say is that if a sovereign country came here and wanted to do business and had to pay tax, the governor couldn't say, well, I like English people, so you don't have to pay tax. The people can come and sue the governor. They can sue the tax collector. They can say, do your duty and collect the tax. In this particular case, they're suing the governor saying, do your duty. We know we can't sue the tribe directly because there's no third-party right to sue. But we can sue you to make you do duties that you created yourself in the process of negotiating the tribal-state compact. The way the system was set up, clearly Congress envisioned that the people would be protected by allowing a compact to exist between tribes, otherwise sovereign, and the states. And then the states in the compact process could put all the laws and regulations that they thought should apply to protect their citizens into the terms of the compact. That would be the protection of the citizens. So if that's the protection of the citizens, and it's done, as in this case, in tort law and workers' comp and so on, then it's not being carried out by the governor. Don't the citizens have a right to sue their governor and say, listen, these were put in here for our protection? You want an answer to that question? I know what your answer is. Back to Greyhound. But I'm just saying I cannot imagine, I cannot imagine that there would be ever a system that would allow the people of the state of California to be disenfranchised. It's really hard to sue any sovereign, even in a democracy. Well, except there's no way. You can't walk into President Bush and say I'm going to sue you to make you get out of Iraq. You've got to do your duty. Except in Kiowa they say. This is the line from Justice Stevens. Why should an Indian tribe have greater immunity than the United States of America, all the states and every foreign nation? And I agree with that philosophy. And they suggest it, of course, is beyond the discretion of this court, that Congress amend the Foreign Commerce Act to simply include Indian tribes and so on. That presupposes all kinds of immunity on behalf of foreign nations and presidents and so on. But they don't have it. They don't have it because if they come here and do business under the Foreign Commerce Act, you have to obey all the same laws any other business does, pay all the same tax anyone else has to pay and so on. But in this particular case, I think clearly the public rights exception is involved here. These are significant rights of virtually every Californian, be they worker, be they a community member that has to put up with the off-site impact, be they tort victims, whatever. Clearly, if there ever was a case. Your formulation swallows the rule, though, because everything becomes public. The way you describe it, everything is public in all such things. I don't know if you live anywhere near an Indian casino and drive the roads and so forth around the casinos or you suffer the increases in crime and the kinds of things that occur. I'm not disagreeing with you, except your formulation of the dividing line obliterates the dividing line. And you cast everything as public interest. If there are places. What's left, if you're right. There are places in California you could live that would be far enough away to be not impacted by Indian casinos. As long as you didn't work there, as long as you didn't go there as a patron, as long as you didn't have to put up with all the traffic and noise and crime and things that come with it around you. So it doesn't affect everybody. But what I'm saying is it affects an awful lot of people. And I don't think they should be disenfranchised through this mechanism. But the trouble with that argument is, as Judge Trotten indicates, that it's hard to come to your position without really eliminating the line. And I think in order to come to your position, we have to ignore American Green. Well, you also have to determine, I suppose, along the way, whether this compact is lawfully in effect. I mean, that's what happened in hotel and restaurant workers. The people sued. Same argument. Prop 5 was unconstitutional. The tribes weren't joined. And the state Supreme Court had no difficulty reaching a decision in that case that Proposition 5 was unconstitutional. Even though it impacted the tribes, they had to go back and get a new Proposition 1A six months later. Are you now asking us to declare the compacts here unconstitutional? Well, frankly, my own view is they are, at least in part. I mean, the state constitution says here's what happens if you're working in a business in California and you get injured. You've got a right to go to the Workers' Compensation Appeals Board. If you don't like what they do, if they don't resolve your case favorably, then you can go to the appellate courts of the state of California. That's what the constitution says. Now, if counsel is inferring that by voting in favor of Proposition 1A, that somehow the legislature, having ratified these compacts previously, is in effect amending Article 14, Section 4 of the constitution, then you've got another problem. And that gets back to the election law issues. You can't have two amendments to the constitution, one hidden by voting in favor of 1A, which is retroactively, in effect, modifying another section of the constitution to allow an Indian tribe to decide what kind of rights you should have if you're an injured worker. Yeah, but the problem with that argument is, in part, that your charge is that the California Supreme Court ignored our Federal Rule 19. Your Federal Court, unfortunately for you, you're not in state court. I guess that the tribes didn't rush in and make that argument anyway, or neither did the Attorney General, because that didn't come up in that case. Well, of course it can't. My comment is facetious. Of course it can't. They don't have Rule 19. That's true. But I'm getting back to my point. This is a state court matter. It should be resolved by state courts, including our Supreme Court, if necessary. But that comes back to the subject matter of jurisdictional questions. Yes. Yeah, sure. And I think in the remand motion, I even argue that I don't recall the statute now, but workers' comp is expressly made by Federal statute a matter of state law. Thank you. I think I'm ready for a break. The case of Show Bar v. State of California is submitted for decision, an interesting and difficult case, an area of, of course, enormous controversy and complexity, as those of us who have dealt with it in various iterations repeatedly know very well. We'll take a 10-minute break, and we'll come back to the last case.
judges: Trott, W. Fletcher, Restani